IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE GUARDIANSHIP OF NOVACEK

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE GUARDIANSHIP OF GLORIA JUNE NOVACEK, AN INCAPACITATED PERSON.

JASON D. NOVACEK ET AL., APPELLEES,

V.

JODY L. NOVACEK, APPELLANT.

Filed November 22, 2022.    No. A-22-201.

Appeal from the County Court for Adams County: MICHAEL P. BURNS, Judge. Affirmed.

Jody Novacek, pro se.

Pierce D. Fiala, of Skalka, Baack & Fiala Law Firm, for appellee, Jason D. Novacek.

MOORE, RIEDMANN, and BISHOP, Judges.

RIEDMANN, Judge.

## INTRODUCTION

An adult child of an incapacitated person appeals the decision of the county court for Adams County establishing a permanent guardianship and conservatorship for her mother. She assigns several errors relating to both the temporary order and permanent order of guardianship and conservatorship. We affirm.

## BACKGROUND

Jason D. Novacek, son of Gloria June Novacek, filed a petition for the establishment of a temporary and permanent guardianship for his mother, Gloria, on April 28, 2021, and requested that his brother, Jay M. Novacek, be appointed as guardian and conservator. The petition identified Gloria's four children: Jason, Jay, James P. Novacek, and Jody L. Novacek. It alleged that an emergency existed and requested that a temporary guardian and conservator be appointed pending

notice and hearing on the petition for a permanent guardian and conservator. It asserted Gloria required assistance in making decisions about her well-being, in making arrangements for medical care, and was an impressionable person with a history of being financially abused. Jason filed his own affidavit and an affidavit of his wife in support of his ex parte application.

The court entered an order on April 29, 2021, appointing Jay as temporary guardian and conservator. It found an emergency existed because Gloria is an incapacitated person under the Nebraska Probate Code and requires assistance with arranging medical care, financial transactions, maintaining her overall safety, and protecting herself from being taken advantage of financially.

The court appointed Sara J. Bockstadter as guardian ad litem (GAL) for Gloria on May 10, 2021. She was appointed special process server for purposes of delivering the pleadings to Gloria. On May 28, Bockstadter served Gloria with a copy of the petition for appointment of temporary guardian and conservator and permanent guardian and conservator, order appointing a GAL, order appointing special process server, order appointing temporary guardian and temporary conservator, letters of temporary guardian and temporary conservator, and an objection to the appointment of a temporary guardian and temporary conservator with notice of hearing. We do not have a copy of the objection in our record, but it appears that an objection to the petition for appointment was filed by Jody.

On June 7, 2021, Jody filed a motion to withdraw her objection to the appointment of a temporary guardian and temporary conservator. On June 11, the court extended the temporary orders and letters until October. The hearing on Jason's petition for guardian and conservator was scheduled for September 24 and October 1. This was later continued to January 21, 2022, upon Jody's request for additional time to prepare a response to the GAL's report. Discovery was to be completed by November 30, 2021. The parties entered into a stipulation on January 6, 2022, for release of medical records from Dr. Lorraine Edwards and Dr. Paul Wibbels, subject to a protective order.

Jody filed a motion to continue the trial on January 19, 2022, for the reason that she had not received medical records from the facility in which Gloria was living. Following a hearing, the court denied the motion, but ordered that the GAL provide copies of the medical records she received from the facility by the next morning, January 20. Trial proceeded on January 21 and the court received into evidence the May 6, 2021, through January 20, 2022, notes of the assisted living facility in which Gloria was residing, Edwards' notes from March 10, 2017, through August 7, 2020, and Wibbels' notes from April 18, 2019, through June 7, 2021. The following evidence was adduced.

Jason is Gloria's youngest child. He first noticed Gloria having memory issues before his father passed away in January 2019. Gloria had been diagnosed with dementia and Alzheimer's in 2017. He noticed a significant decline in Gloria's cognitive functioning between August 2020 and April 2021. During that time, Gloria was living in an apartment complex. In February 2021, Jason observed evidence near the front and back doors of Gloria's apartment indicating that Gloria had been scooping out the contents of her toilet and disposing of it in her yard. He was advised by the maintenance staff that Gloria was putting items down the toilet, causing it to stop up. They indicated that they may contact adult social services due to their concern that she was unable to care for herself.

Gloria acknowledged that she had memory issues, so she and Jason began investigating different places in the area where she might ultimately live. They viewed the facility where she currently resides on several occasions as a potential placement. On April 20, 2021, Jason accompanied his mother to the facility for her to apply for admission. Jason's brother, Jay, had been appointed power of attorney for Gloria in 2019, but because he lived in Texas, Jason facilitated finding Gloria a place to live. Gloria signed the paperwork that day to move in on April 22.

On April 22, 2021, Jody provided the facility with a document purporting to appoint her as her mother's attorney-in-fact that had been signed the prior day. She advised the executive director of the facility, Jessica Soucie, that Gloria would not be residing there. Soucie described Jody's behavior as "very escalated" and "verbally disrespectful." Consequently, Soucie asked her to leave the building. Gloria did not move in until May 6.

Jason filed the petition for appointment of a guardian and conservator on April 28, 2021, and recommended Jay to fill those roles because Jay had been appointed Gloria's attorney-in-fact with the agreement of all the children. Because of this, Jason thought Jay was the natural choice for appointment. He was aware that Jody preferred that Gloria live with her.

Jason opined that it was in Gloria's best interests that Jay be appointed her guardian and conservator. When asked if Gloria living with Jody would be an option, Jason responded, "I don't believe my mother would enjoy that at all. In fact, she has made statements to me that she does not want to live with Jody." He elaborated that there was over a 20-year period of time from 1996 through 2016 in which Jody refused to have contact with their parents.

Bockstadter, an attorney, is the court-appointed GAL for Gloria. She was also appointed as the special process server, so she delivered the pleadings to Gloria. Additionally, based upon conversations with Gloria, she authored a report regarding Gloria's mental capacity and offered an opinion as to whether she should be appointed a guardian and conservator. In making that decision, she also obtained Gloria's medical records and visited with people in Gloria's life. Bockstadter opined that it was in Gloria's best interest that she continue to reside in the facility in which she currently resides and that a full guardian and conservator be appointed for her. She further opined that Jay was a proper person to be appointed. She did not believe that Jody could provide the necessary care for Gloria on a long-term basis.

Jay lives in Joshua, Texas, and was appointed the temporary guardian and conservator on April 29, 2021. In that position, he has restricted Jody's contact with Gloria on two occasions. When Soucie originally banned Jody from the facility in April 2021, Jay requested that she be allowed to visit, but requested that Jody not be allowed to remove Gloria from the facility. On May 7, 2021, Jay learned that Jody had upset Gloria by telling her that her sons were taking all of her money. Consequently, Jay restricted Jody's contact with Gloria, but within a couple of days he called the facility to ask that her contact be unrestricted as long as it was in Gloria's best interest. In October, the facility began requiring that all of Jody's visits be supervised because Gloria was upset and confused following visits from Jody.

Jay opined that his mother needed a permanent guardian and conservator and that he was a suitable person to serve those roles. To have Gloria move in with Jody and have nursing staff come to the house "would be a horrible situation" because Gloria has a hard time remembering Soucie, who she sees nearly every day. Having multiple care providers would be more confusing

to Gloria. And Jay believed it would be "impossible" for Jody to do it on her own 24 hours a day, 365 days a year.

Soucie, the executive director of the assisted living facility in which Gloria was residing at the time of trial, testified that she has a bachelor's degree in psychology, a master's degree in mental health therapy, and is a licensed nursing home administrator and certified dementia practitioner. She first met Gloria when Gloria came to the facility with Jason and his daughter to complete paperwork for residency at the facility. Based upon her interaction with Gloria at that time, Soucie concluded that Gloria would qualify for assisted living but that memory care treatment was something to keep in mind. At the time of trial, Gloria was living on the memory care floor. Gloria is 83 years of age.

Soucie testified that Gloria is unable to care for herself and requires "24/7 care." The facility has implemented a care plan in which staff checks on her every 2 hours during waking hours and every hour at night to deal with issues regarding Gloria barricading her door, spreading feces, and dumping her commode in inappropriate places. In Soucie's professional opinion, Gloria is cognitively impaired and shows many of the typical traits of having dementia. She further opined that based upon her observations, Jay would be a proper person to serve as Gloria's guardian and conservator and that such appointment would be in Gloria's best interest.

Soucie further testified that she believed living in the memory care unit was the least restrictive alternative to maintaining Gloria's success. She explained that living with Jody would diminish Gloria's quality of life because of caregiver burnout and that it would be difficult for one person to provide all of the services that a facility does.

Jody testified that she lives in the same city as her mother. Jody operates a seasonal fireworks stand and an online retail company. She disputed Jason's testimony that there was a 20-year period of time when she did not have contact with her parents but conceded there have been "periods of time" when she was not in contact with them. She requested that Gloria be allowed to live with her rather than have a guardian appointed for her. She also suggested that a bill-paying service could be set up rather than having a conservator appointed. Jody admitted to having been convicted of fraud as it related to her business dealings.

The court entered a written order finding that clear and convincing evidence supported that a permanent, full guardianship and conservatorship was in the best interest of Gloria. It further determined that Jay was best suited to be appointed. It granted the petition for guardianship and conservatorship. Jody appeals.

ASSIGNMENTS OF ERROR

Jody assigns eight errors, which, restated and consolidated are as follows. The county court erred in (1) scheduling a hearing on the petition for appointment of temporary guardian and conservator and permanent guardian and conservator without notice to her and Gloria, (2) appointing a temporary guardian and conservator without an evidentiary hearing, (3) failing to limit the letters of temporary guardianship and conservatorship to the emergency issues, (4) failing to assign a qualified visitor or physician to evaluate Gloria, (5) failing to require Gloria be served copies of all documents, and (6) failing to grant Jody's motion to continue.

STANDARD OF REVIEW

Standing is a jurisdictional component of a party's case because only a party who has standing may invoked the jurisdiction of a court. *In re Guardianship of Barnhart*, 290 Neb. 314, 859 N.W.2d 856 (2015). The question of jurisdiction is a question of law. *Id*. When reviewing questions of law, we resolve the questions independently of the conclusion reached by the lower court. *Id*.

We review a decision denying a motion for a continuance for abuse of discretion. *Weiss v. Weiss*, 260 Neb. 1015, 620 N.W.2d 744 (2001).

ANALYSIS

Jason asserts that we do not have jurisdiction over this appeal. Citing *In re Conservatorship of Franke*, 292 Neb. 912, 875 N.W.2d 408 (2016), he argues that the Nebraska Supreme Court has determined under Neb. Rev. Stat. § 30-1601(2) (Reissue 2016) a protected person's child only has standing to appeal a final order in a guardianship or conservatorship proceeding if the child filed an objection, the court appointed a guardian or conservator, the court's order affected a substantial right of the child, and the child's issues raised on appeal are limited to the sole issues resolved by the final order. We disagree.

Jody filed an objection to the appointment of a temporary guardian and conservator, and although that objection was subsequently withdrawn, she remained an objector. Her status is evidenced by the record. At the beginning of the hearing on January 21, 2022, the court noted appearances, stating "We have an interested party – an objecting party – to the proposed or nominated individual to be the permanent guardian and conservator, Ms. Jody Novacek, present with her attorney." Jody was also recognized by Jason's attorney as an objecting party at trial when he stated to the court that "[t]he objecting party, Jody Novacek, has not requested to be appointed as guardian or conservator." However, due to the absence of a filed objection, Jason contends Jody is without standing to appeal.

Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court. The question of jurisdiction is a question of law. *In re Guardianship of Barnhart, supra*. Section 30-1601(2) states "An appeal may be taken by any party and may also be taken by any person against whom the final judgment or final order may be made or who may be affected thereby."

It is true that in *In re Conservatorship of Franke*, 292 Neb. at 923, 875 N.W.2d at 417, the Supreme Court stated "So, under our implicit interpretation of § 30-1601(2), a protected person's close family members have the right to appeal from a final order in a conservatorship proceeding if they filed an objection and the county court appointed a conservator." However, the court also acknowledged that "The conservatorship statutes do not explicitly authorize any person to object to a conservatorship appointment. But as relevant here, they do require notice of a petition for a conservator to the subject's adult children and a hearing before making an appointment." *Id*. at 922, 875 N.W.2d at 417.

Because the statutes do not explicitly authorize an objection, they also do not specify how one must be made. It is apparent from the bill of exceptions that Jody was recognized as an objector; therefore, we reject Jason's argument that her failure to file a written objection translates to an absence of standing.

Jason also contests Jody's standing, arguing that none of her issues raised on appeal address the issues actually resolved by the county court. We agree that Jody's assigned errors relate primarily to procedures used by the county court and do not explicitly challenge the court's ultimate order appointing Jay as Gloria's guardian and conservator. That does not preclude this court's jurisdiction, but it does affect our analysis of this appeal in that we are limited to a review of Jody's specific assignments of error. See *In re Estate of Soule*, 248 Neb. 878, 540 N.W.2d 118 (1995) (appellate review limited to errors specifically assigned unless court notices plain error).

*Assignments of Error Related to Temporary Order.*

Jody's first five assignments of error relate to the order appointing Jay as the temporary guardian and conservator. She takes issue with the court's scheduling of a hearing on the petition 24 hours after it was filed and without proper notice to the parties, the language of the court's temporary order indicating notice was given or waived, the holding of a temporary appointment hearing without notifying Gloria, the order's language stating the temporary appointment was necessary due to an emergency and that Gloria was incapacitated without an evidentiary hearing, and the court's failing to limit the letters of temporary guardianship and conservatorship to address the emergency issue.

Notwithstanding the provisions of Neb. Rev. Stat. § 30-2626 (Reissue 2016) that allows a temporary guardian to be appointed "pending notice and hearing," the issues related to the temporary order are moot. A matter becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. See *In re Trust Created by Nabity*, 289 Neb. 164, 854 N.W.2d 551 (2014). See, also, *Swoboda v. Volkman Plumbing*, 269 Neb. 20, 690 N.W.2d 166 (2004).

In *In re Trust Created by Nabity, supra*, the court explained that in the case of a temporary order later replaced by a permanent order, the question whether it was issued in error was relevant only from the time it was ordered until it was replaced by the permanent order. Therefore, in an appeal from the permanent order, any issue relating to the temporary order is moot and need not be addressed. *Id*.

Because Jody's first five assigned errors relate to the temporary order which has now been replaced by the permanent order, they are moot and we need not address them.

*Qualified Visitor.*

Jody argues that the court erred when it did not assign a qualified visitor to evaluate Gloria's capacity to live independently while still in her apartment. She further argues that it failed to assign a physician who specialized in short-term memory to evaluate Gloria.

Neb. Rev. Stat. § 30-2619.01 (Reissue 2016) states "[f]ollowing the filing of a petition, the court may appoint a visitor and direct such visitor to conduct an evaluation of the allegations of incapacity." The appointment of a visitor is within the court's discretion. *In re Guardianship of Gilmore*, 11 Neb. App. 876, 662 N.W.2d 221 (2003). Similarly, the court may appoint a physician to examine the alleged incapacitated person. Neb. Rev. Stat. § 30-2619(c) (Reissue 2016).

Our record fails to indicate that Jody raised this issue in the county court. It contains no request for appointment of a visitor or a physician, nor did Jody object to proceeding with the trial in the absence of one or both of them being appointed. An appellate court will not consider an issue on appeal that was not passed upon by the trial court. *In re Guardianship of Suzette G.*, 27 Neb. App. 477, 934 N.W.2d 195 (2019). Therefore, we do not address this assigned error.

*Alleged Failure to Serve Gloria With All Pleadings.*

Jody argues that the court erred when it did not require Gloria to be served copies of all documents related to this matter. However, she does not indicate what pleadings were not served on Gloria. According to the proof of service filed by Bockstadter, she served all of the preliminary pleadings through May 28, 2021, on Gloria. To the extent Gloria may not have been served with pleadings after that date, Jody did not raise this issue in the county court. An appellate court will not consider an issue on appeal that was not passed upon by the trial court. *Id.*

*Denial of Jody's Motion to Continue.*

Jody's final assignment of error is that the court erred when it denied her motion to continue filed on January 19, 2022. Jody filed the motion to continue because she had not received the medical records obtained by the facility in which Gloria was living. Rather than continue the trial, the court ordered that the GAL produce the medical records by 9 a.m. on January 20. Trial began on January 21. Jody asserts that the denial of her motion denied her "due process to bring in medical experts, the cornerstone of her case." Brief for appellant at 24.

Whether to grant a continuance lies in the discretion of the court. *Weiss v. Weiss*, 260 Neb. 1015, 620 N.W.2d 744 (2001). Factors to consider include (1) the number of continuances granted to the moving party, (2) the importance of the issue presented in the matter, and (3) whether the continuance was being sought for a frivolous reason or dilatory motive. *Id.*

Jody requested and received one prior continuance on October 1, 2021, for the purpose of preparing for "findings" contained in the GAL report. The initial GAL report revealed that Gloria was incapacitated "per Paul C. Wibbels, M.D." It further identified the health care facilities whose records the GAL reviewed and recommended a full guardianship. The court set a discovery deadline of November 30. It does not appear that Jody engaged in any discovery from October 1 to November 30 in an attempt to obtain the records from the facilities themselves. On January 6, 2022, the parties stipulated to a release of Edwards' and Wibbels' records.

In the court's order denying the continuance, it ordered the GAL to provide both counsel with copies of the medical records that she retrieved from the care facility "which supplement medical records which were originally attached to her report." Accordingly, it appears that Jody had some medical records as of October 1, 2021, when she received the GAL's report. Any need for rebuttal medical testimony would have been known at that time; therefore, we reject her argument that the delay in receiving the additional records violated her due process to bring in medical experts. The denial of her motion for a continuance was not an abuse of discretion.

## CONCLUSION

Finding no error in the county court's proceeding, we affirm the order appointing Jay as Gloria's permanent guardian and conservator.

AFFIRMED.